Entered: July 17th, 2025
Signed: July 17th, 2025

**SO ORDERED**



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: </br></br>KRISTIN ANN TKACH PELGRIM, </br></br>*Debtor*. </br>_____ </br></br>CHARLES R. GOLDSTEIN, </br>Chapter 7 Trustee, </br></br>*Plaintiff*, </br></br>and </br></br>MATTHEW W. CHENEY, </br>Acting United States Trustee for Region Four, </br></br>*Plaintiff*, </br></br>vs. </br></br>KRISTIN ANN TKACH PELGRIM, </br></br>*Defendant*. </br>_____ | ) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) </br>) | Case No. 23-12670-DER </br>(Chapter 7) </br></br></br></br></br></br></br></br></br></br></br></br>Adversary Pro. No. 23-00305-DER |

**MEMORANDUM OPINION AND ORDER**

This adversary proceeding calls on this Court to decide a narrow issue. Matthew W. Cheney, the Acting United States Trustee for Region Four (the "U.S. Trustee"), asks this Court to

deny the Chapter 7 discharge of Kristin Ann Tkach Pelgrim (the "Debtor") under 11 U.S.C. § 727(a)(6) because she refused to obey an order of this court.[1] This Court conducted an in-person trial on the merits on March 26, 2025. At trial, the U.S. Trustee called one witness (Angela Shortall) to testify and offered 50 exhibits that were admitted into evidence. The Debtor (who represents herself) appeared at trial,[2] called herself to testify as a witness, and vigorously opposed the relief sought by the U.S. Trustee. At the conclusion of the trial, the Court directed the parties to submit post-trial memoranda in lieu of closing argument. The U.S. Trustee and the Debtor have now both submitted their memoranda,[3] and this matter is now ripe for a decision on the merits.

After due deliberation, this Court is prepared to render a decision in this matter. For the reasons explained below, this Court finds based upon the preponderance of the evidence that the Debtor received, was aware of, and willfully and intentionally refused to obey, a lawful order of this Court entered in the Main Case – namely, the Order Compelling Access to Real Property (the "Order Compelling Access") entered by Judge Nancy V. Alquist on October 16, 2023.[4] Accordingly, § 727(a)(6) bars entry of a Chapter 7 discharge in favor of the Debtor in her Main Case.

---

[1] This adversary proceeding is related to the Debtor's main Chapter 7 bankruptcy case, which was commenced in this Court when the Debtor filed a voluntary petition on April 18, 2023 (the "Petition Date"), seeking relief under Chapter 7 of the Bankruptcy Code (Title 11 of the United States Code) (the "Main Case"). See, *In re Kristin Ann Tkach Pelgrim*, Case No. 23-12670-DER. Plaintiff's Exhibit 3 [Main Case Docket No. 1]. The Debtor states in her petition, and a later filed amended petition, that during the preceding 8 years she also used the names "Kristin A Tkach Pelgrim" and "Faith Beckett." *Id*. at p. 1 and Plaintiff's Exhibit 4 [Main Case Docket No. 6]. The Debtor acknowledges, and this Court finds, that she and Faith Beckett are one and the same person.

[2] At trial, the Debtor asserted that she was making a "limited appearance outside the district" as the trustee of the Kristin Ann Tkach Pelgrim Bankruptcy Estate Trust (the "KATPBE Trust"), the Trust 123-00305 (the "305 Trust"), and/or some other trust entity. Whatever rights these trusts (assuming they lawfully exist) may have, they have no standing to be heard at trial in this adversary proceeding. In any event, the Debtor herself was present at trial and no other person appeared to contest the U.S. Trustee's claim that the Debtor's discharge should be denied.

[3] On April 8, 2025, the U.S. Trustee filed The United States Trustee's Closing Argument [Docket No. 158]. On May 2, 2025, the Debtor filed her "Judicial Notice to Strike re: Closing Argument Filed by United States Trustee (Doc. 158)" [Docket No. 164], which the Court construes as the Debtor's closing argument. In addition, the Court has considered the papers subsequently filed by the Debtor [Docket Nos. 165 and 168] as part of her closing argument.

[4] Plaintiff's Exhibit 32 [Main Case Docket No. 179].

## JURISDICTION

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Rule 402 of the Local Rules of the United States District Court for the District of Maryland. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J) ("Core proceedings include, but are not limited to, … objections to discharges.") Venue is proper in this Court under 28 U.S.C. § 1409(a). This memorandum opinion constitutes this Court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rule 7052 of the Federal Rules of Bankruptcy Procedure).[5]

## FINDINGS OF FACT

The Debtor acknowledges that her motivation from the outset of the Main Case was to utilize the Chapter 7 bankruptcy process to retain possession of 7021 Southmoor Street, Hanover, MD 21076 (the "Real Property").[6] On her Schedule A/B in response to Question 1 of Part 1 asking if she owned or had "any legal or equitable interest in any residence, building, land or similar property," the Debtor (a) answered "yes," (b) listed the Real Property, (c) stated the value of the

---

[5] For the avoidance of doubt, the Court has considered and rejected the various jurisdictional, standing, and other related arguments made by the Debtor at trial and in the Notice of Possession and Control, Assumption of All Authority [Docket No. 143], the Notice of Change in Standing & Appearance [Docket No. 144], the Notice – Declaration in Chief Notice of Loss of All Authority and Prohibition Against Proceeding Against the Trust [Docket No. 146], the Judicial Notice – Objection to Certification of Exhibits, Pre Trial Memorandum and Notice of Intervenor's Trespass [Docket No. 149], the Pre Trial Statement [Docket No. 150], the Memorandum of Law in Support of Objection to Certification of Exhibits and Notice of Intervenors' Trespass [Docket No. 151], the Declaration in Chief of Historical Events and Procedural Violations [Docket No. 152], and the Notice – Motion in Limine to Exclude Intervenors and Bar Unauthorized Participation for Lack of Standing and Equitable Title [Docket No. 155] filed by the Debtor on March 11, March 12, March 18, March 20, March 24, and March 26, 2025. As a matter of bankruptcy law, the Debtor simply has no right or authority to divest this Court of jurisdiction by a purported transfer of this adversary proceeding, the Main Case, or any property of the bankruptcy estate to the KATPBE Trust, the 305 Trust, or any other trust or party.

[6] Plaintiff's Exhibit 3 [Main Case Docket No. 1, p. 2]. At trial, the Debtor stated that she continued to live at the Real Property. Various filings made by the Debtor in the Main Case indicate that she was subsequently evicted from the Real Property by the foreclosure sale purchaser on or about June 18, 2025. This Court denied the Debtor's several requests to stay the eviction for the reasons stated in the Order Denying Emergency Motion for TRO and Preliminary Injunction, Emergency Motion to Expedite Hearing, Motion for Sanctions for Violation of the Automatic Stay, and Notice-Motion for Violation of Bankruptcy Automatic Stay entered on April 11, 2025 [Main Case Docket No. 434], and orders subsequently entered on June 9, June 11, and June 13, 2025 [Main Case Docket Nos. 460, 468, and 471].

Real Property was $135,000.00, and (d) described the nature of her interest in the Real Property as "estate and trust."[7] On her Schedule D, the Debtor listed M&T Bank as the holder of a disputed secured claim in the amount of $374,345.63.[8] The Debtor signed Schedule A/B, Amended Schedule A/B, and Schedule D stating under penalty of perjury "that the answers are true and correct."

At the time the Debtor filed her voluntary bankruptcy petition in this Court, the Debtor was concerned about a possible foreclosure sale of the Real Property. At an evidentiary hearing held by Judge Alquist on April 23, 2024, the Debtor testified as follows:

> Q [Mr. Bernstein]: Ms. Pelgrim, why did you file this bankruptcy case?
>
> A [the Debtor]: Because – this was in 2023, okay. Around 2022, I don't remember the exact date, there were a filing for foreclosure. So I tried to do my best through that process and realized that if I could save my shelter, I could try to do that with the assistance of the Bankruptcy Court.
>
> Q [Mr. Bernstein]: And so you wanted the Bankruptcy Court to prevent the foreclosure on your house, correct?
>
> A [the Debtor]: Yes.[9]

When the Main Case was commenced by the Debtor, the U.S. Trustee duly appointed Charles R. Goldstein to serve as the Chapter 7 trustee for the bankruptcy estate created by operation of law under 11 U.S.C. § 541 (the "Chapter 7 Trustee"). For many years, Mr. Goldstein served as a member of the U.S. Trustee's panel of trustees appointed to serve in cases filed under Chapter 7

---

[7] Plaintiff's Exhibit 7 [Main Case Docket No. 26, p. 3] ("Schedule A/B"). See also, Plaintiff's Exhibit No. 21 [Main Case Docket No. 96, p. 3] ("Amended Schedule A/B"). The Debtor (acting pro se) also filed a voluntary Chapter 7 petition in this Court on June 26, 2024, on behalf of the "Beckett Family Trust, a Revocable Trust, dated February 26, 2015" in which she listed the Real Property as the trust's principal asset with a value of $525,000.00 – an amount substantially higher than the value listed by the Debtor in this case. Judge Alquist dismissed that case on July 2, 2024, because (among other reasons) the trust was not represented by an attorney. See, *In re Beckett Family RVOC Living Trust*, Case No. 24-15360 [Docket Nos. 1 and 8].
[8] Plaintiff's Exhibit No. 7 [Main Case Docket No. 26, p. 16] ("Schedule D").
[9] Transcript of Hearing held on April 23, 2024 [Main Case Docket No. 353] Plaintiff's Exhibit 51, p. 83:7-15.

~ 4 ~

of the Bankruptcy Code. Mr. Goldstein recently decided to stop taking appointments in new cases, but he continues to serve as the Chapter 7 trustee in the cases (including the Debtor's Main Case) in which he was already appointed.[10]

Angela Shortall, the witness at trial, is an attorney admitted to practice before this Court who works with the Chapter 7 Trustee.[11] She is a member of the U.S. Trustee's panel of trustees appointed to serve in cases filed under Subchapter V of Chapter 11 of the Bankruptcy Code.[12] The Court finds that Ms. Shortall is a credible witness.

On May 10, 2023, M&T Bank filed a Motion Seeking Relief from the Automatic Stay in the Main Case (the "M&T Motion")[13] asserting it was the holder and/or servicer of a promissory note and related deed of trust on the Real Property that secured repayment of indebtedness in the approximate principal amount of $352,571.83 plus interest, late charges, and other costs.[14] The M&T Motion was filed less than a month after the Petition Date and 20 days before the date set for the Chapter 7 Trustee to conduct the meeting of creditors pursuant to 11 U.S.C. § 341. The hearing on the M&T Motion was originally set for July 6, 2023, but on the Chapter 7 Trustee's motion it was continued to August 24, 2023.[15]

Beginning on June 22, 2023, Ms. Shortall engaged in email correspondence with the Debtor and Michael E. Seebeck, a third party representing himself as appearing on the Debtor's behalf, to arrange for an agreed date to provide the Chapter 7 Trustee's realtor access to the Real

---

[10] Trial Transcript, p. 122:7-15.
[11] Id., p. 108:2-4.
[12] Id., p. 66:2-13.
[13] Main Case Docket No. 32.
[14] The exhibits attached to the M&T Motion included what appear to be (i) an Adjustable Rate Note dated March 10, 2015, executed by "Faith Beckett" a/k/a "Kristin A. Tkach-Pelgrim," "Kristin Tkach," and "Kristin Pelgrim," and (ii) a Purchase Money Deed of Trust also dated March 10, 2015, executed by "Faith Beckett" and by "Faith Beckett as Trustee under The Beckett Family Trust, a Revocable Living Trust dated February 26, 2015."
[15] See, Order to Continue Hearing on (1) Motion for Relief from Stay (2) Trustee's Objection to Motion for Relief from Stay and (3) Debtor's Objection to Motion for Relief from Stay Scheduled for July 6, 2023, at 2pm entered on July 5, 2023 [Main Case Docket No. 60].

Property for purposes of valuation and response to the M&T Motion.[16] As detailed below, that effort proved unsuccessful.

On June 27, 2023, the Chapter 7 Trustee conducted a continued meeting of creditors pursuant to 11 U.S.C. § 341, at which the Debtor appeared and testified. At that meeting, Ms. Shortall made the Chapter 7 Trustee's position clear,

> But the house itself, there is a motion for relief pending, and Mr. Goldstein needs to be able to respond to that motion for relief. I will tell you that our independent research says that the house is probably worth close to $500,000 and with the lien that M&T has shown in the motion for relief, there is equity in that property over and above the homestead exemption.
>
> So, what Mr. Goldstein needs to do is understand if there really is value to that, and that – and where the thing we've got to determine is the actual market value, which is why we want to get our real estate agent in there to view the property.[17]

A few moments later at that same meeting, the following exchange occurred involving Ms. Shortall, the Debtor, and the Chapter 7 Trustee:

> [Ms. Shortall]: … For our purposes, we just need to figure out what the value of the property is.
>
> So if you could please check your schedule and see what – if Friday works, and if Friday does not work, if you can give me some dates next week that we can get in?
>
> [the Debtor]: Well, I will certainly – I can't respond to that right now, but I will get back with you as to how I will respond to you and move forward with this.
>
> [Ms. Shortall]: Okay.
>
> [the Chapter 7 Trustee]: Okay. And just to let you know, and again, we're relatively nice people, so you know, we're not going to have the sheriff come in and knock down the door. But if brought that that point, we have, you know, I have obligations, you

---

[16] Plaintiff's Exhibit Nos. 8, 9, and 10.
[17] Plaintiff's Exhibit No. 47, p. 17:10-21.

know, fiduciary obligations to your Creditors to make sure that we administer the estate.

So, I'm hoping that we can work cooperatively. That's really my point.[18]

There is no doubt that following the June 27, 2023, meeting of creditors the Debtor understood that the Chapter 7 Trustee needed access to the Real Property to carry out his fiduciary duties. The Debtor continued to be uncooperative and to resist the Chapter 7 Trustee's efforts to perform his duties despite her clear statutory duty to cooperate. 11 U.S.C. § 521(a)(3) (The debtor shall … if a trustee is serving in the case …, cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title.").

On July 5, 2023, Ms. Shortall sent the Debtor another email message indicating that "if I don't hear from you, Mr. Goldstein will be required to file a motion to compel you to allow us access to the property."[19] After no response, the Chapter 7 Trustee filed his Trustee's Motion to Compel (i) Production of Documents and (ii) Access to Real Property (the "Motion to Compel").[20] On August 14, 2023, the Debtor filed her Objection to the Motion to Compel (the "Objection").[21] In the Objection, the Debtor asserted a host of grounds said to support her argument that the Chapter 7 Trustee lacked "the requisite authority to employ pressure for the purpose of property access." On August 23, 2023, the Chapter 7 Trustee filed a Line that withdrew the Motion to Compel to the extent that it sought production of tax return and divorce settlement documents.[22]

---

[18] *Id*. pp. 22:9-23:1.
[19] Plaintiff's Exhibit No. 10.
[20] Plaintiff's Exhibit No. 11 [Main Case Docket No. 66].
[21] Plaintiff's Exhibit No. 16 [Main Case Docket No. 78]. Because the Objection was unsigned, the Clerk of Court issued a Deficiency Notice [Main Case Docket No. 79]. On August 14, 2023, the Debtor timely refiled a signed copy of the Objection. Plaintiff's Exhibit No. 18 [Main Case Docket No. 82].
[22] Line Re: Status of Debtor's (i) Production of Documents and (ii) Access to Real Property (Related Document Docket No. 66 Trustee's Motion to Compel) [Main Case Docket No. 94].

Judge Alquist conducted an in-person hearing on the M&T Motion on August 24, 2023, at which she determined that (a) the M&T Motion would be granted on terms agreed to by the Chapter 7 Trustee and counsel for M&T Bank, and (b) the Motion to Compel would be continued for an in-person hearing to be held on September 14, 2023.[23] The Debtor was present for the August 24, 2023, hearing and agreed she was available for the continued in-person hearing on the Motion to Compel set for September 14, 2023.[24]

On September 1, 2023, Judge Alquist entered the Order Granting Motion of M&T Bank Seeking Relief from the Automatic Stay as to 7021 Southmoor Street, Hanover, MD 21076 and Allowing the Chapter 7 Trustee First Right to Sell (the "Lift Stay Order").[25] Under the terms of the Lift Stay Order, M&T Bank was required to forebear from exercising its right to foreclose against the Real Property "for a period of One Hundred Eighty (180) days from August 24, 2023 to allow the Chapter 7 Trustee the opportunity to market and sell the [Real Property] and disburse to [M&T Bank]."[26] Because of this, the Chapter 7 Trustee had until February 20, 2024, to evaluate the Real Property and determine whether it could be administered for the benefit of the creditors of the bankruptcy estate. Ms. Shortall testified at trial that the Chapter 7 Trustee believed physical access to view the entire Real Property was important so that he could determine its value and whether a sale was feasible.[27]

On September 5, 2023, the Debtor filed what she styled as a "Notice of Filing," attached to which was a letter from the Debtor addressed to the Chapter 7 Trustee and Ms. Shortall that purported to notify them that they were "officially FIRED."[28] A debtor has no authority to

---

[23] See, Proceeding Memo dated August 24, 2023. Plaintiff's Exhibit No. 22 [Main Case Docket No. 99].
[24] Transcript of Hearing held on August 24, 2023 [Main Case Docket No. 380], p.5:19-20 and p. 51:8-24.
[25] Main Case Docket No. 102. The Lift Stay Order was not appealed.
[26] *Id*. at p. 3.
[27] Transcript of Hearing held on September 14, 2023 [Main Case Docket No. 379] Plaintiff's Ex. 50 (the "September 2023 Transcript), pp. 23:22-24:1.
[28] Main Case Docket No. 112. See also, Plaintiff's Exhibit 37.

unilaterally remove a Chapter 7 trustee appointed by the U.S. Trustee and the Court did not do so. See, 11 U.S.C. § 324(a) ("The **court**, after notice and a hearing, may remove a trustee … for cause.") (emphasis added).

On September 14, 2023, Judge Alquist conducted an in-person hearing on the Motion to Compel that was attended by the Chapter 7 Trustee, Angela Shortall as counsel for the Chapter 7 Trustee, Hugh Bernstein as counsel for the U.S. Trustee, Richard Rodgers as counsel for M&T Bank, Abdul Hakeem Ali (who indicated he appeared pursuant to a power of attorney),[29] and Michael E. Seebeck (who appeared virtually by special permission).[30] Despite her prior agreement that she was available, the Debtor was not present for that hearing.[31] Mr. Hakeem Ali and Mr. Seebeck raised various and repeated objections to the Motion to Compel that were overruled by Judge Alquist. At the conclusion of the hearing, Judge Alquist granted the Motion to Compel and stated,

> And to the extent – to the extent that it's held by the Faith Beckett Family Trust and to the extent that the Debtor is the Grantor and the Beneficiary under that Trust, and that it's a fully revocable trust, property held under such trust would be property of the estate.
>
> So I believe that the Chapter 7 Trustee in this case has an obligation to take the steps that have been requested by Ms. Shortall in connection with this property of the estate, and I have not heard justification why the evaluation requested by Ms. Shortall should not be granted.[32]

---

[29] At the hearing, Mr. Hakeem Ali acknowledged that he is not an attorney and stated that he was appearing for the Debtor pursuant to a power of attorney. September 2023 Transcript, pp. 7-15. The power of attorney in question was apparently the General Power of Attorney signed by the Debtor and filed on September 12, 2023 [Main Case Docket No. 122]. Judge Alquist declined to recognize the power of attorney as valid for the reasons stated at the hearing.
[30] Order Approving Request for Remote Participation in Hearing [Main Case Docket No. 120]. In his Emergency Motion to Attend the September 14, 2023, Hearing Via Zoom Video [Main Case Docket No. 118], Mr. Seebeck stated that he was the "Attorney in fact" for the Debtor. Judge Alquist confirmed at the hearing that Mr. Seeback is not an attorney. September 2023 Transcript, p. 15:25-16:1.
[31] Judge Alquist stated at the hearing that, "I'm simply noting that Ms. Pelgrim said that she physically would be present today." September 2023 Transcript, p. 21:12-13.
[32] September 2023 Transcript, pp. 30:20-31:4.

Judge Alquist subsequently entered the Order Compelling Access on the terms stated in her ruling, which included accommodations to the Debtor by reason of the fact that the Real Property was her residence.

Although she was not present for the September 14, 2023, hearing, the Debtor seems to have promptly learned of Judge Alquist's ruling. The Debtor filed a Notice of Appeal on October 5, 2023, that stated she was appealing the September 14, 2023, "on the record ruling to grant the Motion to Compel, Doc 66, access to the shelter of the Debtor."[33] The Order Compelling Access, however, was not entered until October 16, 2023. The Debtor did not seek or obtain a stay of that order pending its appeal.

On the following Friday, October 20, 2023, Ms. Shortall sent the Debtor an email message that included a copy of the Order Compelling Access and requested the Debtor to agree to a mutually convenient time for inspection of the Real Property.[34] The Order Compelling Access provided that "the Trustee will work with the Debtor to find a mutually agreeable time, within thirty (30) days of the entry of this Order, for the Trustee, or his representative, and his realtor to have access to the Real Property to conduct a physical examination of the interior and exterior of the Real Property."[35]

On Monday, October 23, 2023, Mr. Seebeck faxed Ms. Shortall what he styled as an "Irrevocable Equitable Estoppel by Acquiescence" that asserted that the Order Compelling Access was void and that Ms. Shortall should "cease and desist" (the "Cease-and-Desist Demand"). Mr. Seebeck signed the Cease-and-Desist Demand as "authorized agent for the KRISTIN ANN

---

[33] Plaintiff's Exhibit No. 30 [Main Case Docket No. 163]. The Debtor's appeal was dismissed by the United States District Court for the District of Maryland by an order entered by Judge Rubin on August 1, 2024. Plaintiff's Exhibit 46 [Main Case Docket No. 396]. As explained in her accompanying Memorandum Opinion, Judge Rubin dismissed the appeal because the Debtor failed to comply with applicable rules governing the appeal. Main Case Docket No. 395.
[34] Plaintiff's Exhibit No. 40.
[35] Plaintiff's Exhibit No. 32.

TKACH PELGRIM™ BANKRUPTCY ESTATE, in her private capacity tradename and all derivatives."[36] Since the Chapter 7 Trustee is the sole representative of the bankruptcy estate, Mr. Seebeck could only have been acting on behalf of the Debtor, the KATPBE Trust, or some other entity or name created by or related to the Debtor. In any event, the Court finds that Mr. Seebeck was acting in concert with the Debtor.

The Cease-and-Desist Demand was accompanied by multiple documents signed by the Debtor as well as invoices dated October 20, 2023, asserting supposed claims against Ms. Shortall in various capacities that (excluding duplicates) totaled $213,710,490.00.[37] The Debtor did not otherwise respond to Ms. Shortall's October 20, 2023 email, and refused to work with the Chapter 7 Trustee to arrange a mutually convenient time for access to the Real Property as required by the Order Compelling Access.

On October 30, 2023, Ms. Shortall sent the Debtor another email message that (i) included a copy of the Cease-and-Desist Demand, (ii) advised the Debtor that the Order Compelling Access was valid and enforceable despite the then pending appeal, and (iii) again requested that the Debtor arrange a time prior to November 15, 2023, for access to the Real Property. The Debtor did not respond to this email either.

On December 13, 2023, the Chapter 7 Trustee filed his Motion to Show Cause, attaching copies of Ms. Shortall's October 20, 2023, email message to the Debtor and the Cease-and-Desist Demand.[38] The Motion to Show Cause was served on the Debtor by both mail and email. The Debtor did not file a response.

---

[36] Plaintiff's Exhibit No. 37.
[37] *Id*. at pp. 16-40. The invoices appear to assert claims that have no basis in law or fact.
[38] Plaintiff's Exhibit No. 41 [Main Case Docket No. 209].

On January 4, 2024, Judge Alquist entered an Order to Show Cause that required the Debtor to appear for a hearing on January 11, 2024, to show cause why she should not be held in contempt and required to pay the Chapter 7 Trustee's costs and expenses incurred in connection with enforcement of the Order Compelling Access (the "Show Cause Order").[39] At the hearing on January 11, 2024, Judge Alquist continued the hearing on the Show Cause Order to March 20, 2024.[40]

The March 20, 2024, hearing on the Show Cause Order was never held. On March 11, 2024, the Chapter 7 Trustee filed (a) his Motion for Entry of Order Dissolving Order to Show Cause (the "Motion to Dissolve"),[41] and (b) a Chapter 7 Trustee's Report of No Distribution (the "NDR").[42] The Chapter 7 Trustee stated in the Motion to Dissolve that the Debtor's numerous frivolous filings and attempts to thwart administration of the bankruptcy estate had required a substantial investment of resources and caused the Chapter 7 Trustee to incur fees in excess of $100,000. In sum he stated, "The proposed equity in the Property is insufficient to generate a distribution to creditors in light of the administrative costs incurred. Trustee has determined that even if the Debtor is required to pay for the costs associated with enforcing the Motion to Compel, and the Trustee was actually able to collect that award, the estate would still be administratively insolvent."[43] On March 18, 2024, Judge Alquist entered an Order that granted the Motion to Dissolve, dissolved the Show Cause Order, and cancelled the hearing scheduled for March 20, 2024.[44]

---

[39] Plaintiff's Exhibit No. 42 [Main Case Docket No. 235].
[40] See Proceeding Memo [Main Case Docket No. 253].
[41] Main Case Docket No. 297.
[42] Main Case Docket No. 298. The NDR is a Chapter 7 trustee's report that they conducted the meeting of creditors, investigated a debtor's business and financial affairs, and concluded that there are no assets that should be liquidated to make distributions to administrative and general unsecured creditors – that is, that they conclude that the case is what is commonly referred to as "a no asset case."
[43] Main Case Docket No 297, Page 3.
[44] Main Case Docket No. 299.

Based upon these facts, the Court finds that: (1) the Order Compelling Access was a lawful order; (2) the Debtor received and was aware of the Order Compelling Access: (3) the Debtor refused to obey the Order Compelling Access; and (4) the Debtor's refusal to obey the Order Compelling Access was willful and intentional, and not merely the result of inadvertence, misunderstanding, or inability to comply.

## **CONCLUSIONS OF LAW**

In considering this matter, this Court has construed the various motions, notices, and other papers filed by the Debtor, and her numerous arguments, with the deference required by applicable decisions of the Supreme Court with respect to unrepresented parties. See *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) ("[P]ro se filings must be construed liberally … 'so as to do substantial justice.'") (citations omitted). At trial and in her many filings, the Debtor continues to assert that the U.S. Trustee's claim is time barred. The Court need not address those arguments because they were addressed by a prior order of this Court holding that the claim is timely.[45]

In addition, the Debtor asserts repeatedly that the U.S. Trustee's claim should be denied because she submitted "financial instruments" to the Clerk of Court in the amount of $37,218,647.20. The Court need not address that argument because as explained in the Clerk's letter to the Debtor dated February 7, 2025, the "financial instruments" were not negotiated, the $30,000,000 and $200,000 "bonded promissory notes" were returned to the Debtor, and the $7,018,647.20 U.S. Treasury check was turned over to the Chapter 7 Trustee.[46] Ms. Shortall

---

[45] See, Order Denying Defendant's Request for Findings of Fact and Conclusions of Law, Etc. [Docket No. 125, at pp. 4-57].

[46] Letter dated February 7, 2025, from Mark Neal to the Debtor [Main Case Docket No. 421]. See also, Order entered on March 12, 2025 [Main Case Docket No. 425] ("The letter from the Clerk dated February 7, 2025 [Docket No. 421] sets forth a plain statement of the Clerk's disposition of the U.S. Treasury check and other 'financial instruments' referred to by the Debtor. Accordingly, no other or more definite statement is required, and any and all relief requested in this motion is DENIED.") (referring to the Debtor's Motion for a More Definite Statement [Docket No. 422]); Order Directing Clerk to Turnover Check to Chapter 7 Trustee [Main Case Docket No. 349]; and Clerk's Memo Documenting Return of Check [Main Case Docket No. 350].

testified at trial that the U.S. Treasury check was not negotiated by the Chapter 7 Trustee and that it was turned over to the U.S. Justice Department by the Chapter 7 Trustee pursuant to a subpoena.[47] Regardless, the check was cancelled by the IRS before it was turned over to the Chapter 7 Trustee.[48]

### Standard for Denial of Discharge

Turning to the decision at hand, denial of a debtor's discharge is a serious matter. As many courts have observed, a discharge should not be denied to an honest debtor merely because of oversight, inadvertence, or mistake on the part of the debtor. *Standiferd v. United States Trustee (In re Standiferd)*, 641 F.3d 1209, 1212 (10th Cir. 2011) ("the opportunity for 'a completely unencumbered new beginning' is reserved only for 'the honest but unfortunate debtor.'") (quoting *Grogan v. Garner*, 498 U.S. 279, 286–287 (1991)); *United States Trustee v. Sieber (In re Sieber)*, 489 B.R. 531, 554 (Bankr. D. Md. 2013) ("A debtor will not be denied discharge … due to mere mistake or inadvertence.") (citing *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294-95 (10th Cir. 1997)). As the Fourth Circuit and other circuits have held, "The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." *Van Robinson v. Worley (In re Worley)*, 849 F.3d 577, 583 (4th Cir. 2017) (quoting *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987)). See also, *Friendly Fin. Disc. Corp. v. Jones (In re Jones)*, 490 F.2d 452, 456 (5th Cir. 1974) (citing *In re Pioch*, 235 F.2d 903, 905 (3d Cir. 1956)).

As the Fourth Circuit has said, "Given the harsh consequences of a denial of discharge, the statute is ordinarily construed liberally in the debtor's favor." *Worley*, 849 F.3d at 583 (citing *Smith v. Jordan (In re Jordan)*, 521 F.3d 430, 433 (4th Cir. 2008)). In evaluating an objection to a

---

[47] Transcript of Hearing Held on March 26, 2025, Docket No. 166-2 (the "Trial Transcript"), p. 139:12-18 and p. 140: 2-6.
[48] See Status Report by Internal Revenue Service Regarding Check [Main Case Docket No. 335].

debtor's discharge, 11 U.S.C. § 727 is construed liberally in favor of debtors and strictly against the objecting party. *Cho v. Park (In re Park)*, 480 B.R. 627, 631-32 (Bankr. D. Md. 2012) (citations omitted).

The objecting party carries the burden of showing by a preponderance of the evidence that the debtor is not entitled to a discharge. *Farouki v. Emirates Bank Int'l (In re Farouki)*, 14 F.3d 244, 249 (4th Cir. 1994). The burden may shift to the debtor to provide satisfactory, explanatory evidence if the objecting party presents a prima facie case, but the ultimate burden of proof always rests on the objecting party. *Id*. at 249. *See also Lafarge North Am., Inc. v. Poffenberger (In re Poffenberger)*, 471 B.R. 807, 819 (Bankr. Md. 2012). The provisions of § 727(a) are phrased in the disjunctive, so proof by an objecting party of only one of the grounds in the statute requires the court to deny entry of a debtor's discharge. *Farouki*, 14 F.3d at 250. Lastly, courts must bear in mind the Fourth Circuit's admonition in *Worley* that denial of discharge "is a severe sanction and should be reserved for instances in which a debtor contravenes the basic compact underlying the [Bankruptcy] Code's promise of a 'fresh start.'" 849 F.3d at 587-88 (citing *Farouki*, 14 F.3d at 249).

### § 727(a)(6)

With these general principles in mind, the Court turns to consideration of the application of § 727(a)(6) to the circumstances of this case. The Court concludes that the U.S. Trustee has met his burden, and the Debtor's discharge must be denied.

Section § 727(a) provides that a court must grant a discharge to a debtor unless "the debtor has refused, in the case … to obey any lawful order of the court." 11 U.S.C. § 727(a)(6)(A). In 2008, the Fourth Circuit explained,

> The term used in § 727(a)(6)(A) is "refused" not "failed."
> Accordingly, the Court must find that the Debtors' lack of

> compliance with the relevant court order was willful and intentional. The party objecting to discharge satisfies this burden by demonstrating the debtor received the order in question and failed to comply with its terms. Such a showing then imposes upon the debtor an obligation to explain his non-compliance.

*Smith v. Jordan (In re Jordan)*, 521 F.3d, 430,433 (4th Cir. 2008) (citations omitted) (quoting *Pierce v. Fuller (In re Fuller)*, 356 B.R. 493, 495 (Bankr. D.S.D. 2006)).[49]

The circumstances in the instant case are like those before the United States District Court for the District of Columbia in *Moore v. Robbins (In re Moore)*, 24 F.Supp.3d 88 (D.D.C. 2014). There, the District Court affirmed a Bankruptcy Court order denying discharge under § 727(a)(6) based upon the debtor's failure to comply with an order granting the Chapter 7 trustee access to the debtor's real property for inspection by auctioneers. Citing the Fourth Circuit's decision in *Jordan*, the *Moore* court said:

> The appellants do not challenge the Bankruptcy Court's factual finding that they willfully violated the Bankruptcy Court's orders to cooperate with the trustee, and there is nothing in the record to indicate that those findings were clearly erroneous. This effectively ends this Court's inquiry since, once a trustee meets her "burden by showing that the debtor received the order in question and failed to comply with its terms," the burden shifts to the debtor "to explain [her] non-compliance." *In re Jordan*, 521 F.3d at 434 (quoting *In re Jeffries*, 356 B.R. at 667 (brackets in original). The appellants have offered no explanation.

*Moore*, 24 F.Supp.3d at 95.

The plain meaning of the text of § 727(a)(6)(A) and the Fourth Circuit's decision in *Jordan* require proof of four elements for denial of discharge – namely, (1) the Court entered a lawful order, (2) the Debtor received and was aware of that order, (3) the Debtor refused to obey that

---

[49] In *Jordan*, a Chapter 7 trustee sought revocation of a debtor's discharge under 11 U.S.C. § 727(d)(3), which provides in relevant part that "the court shall revoke a discharge granted under subsection (a) of this section if … the debtor committed an act specified in subsection (a)(6) of this section." Here, the U.S. Trustee objects to entry of discharge in the first instance. The Fourth Circuit's reasoning and interpretation of § 727(a)(6)(A) applies equally to the circumstances presented here where the Court must determine whether the Debtor should be granted a discharge.

order, and (4) the Debtor's refusal was willful and intentional and not merely the result of inadvertence, misunderstanding, or inability to comply. The U.S. Trustee has met his burden on all four elements.

### Factors in This Case

The Order Compelling Access was a lawful order entered by this Court. Although the term "lawful order" is not defined in the Bankruptcy Code, it falls well within the ordinary or common meaning of the term. It was a command, direction, or instruction issued by this Court to aid and enforce (i) the Chapter 7 Trustee's duty to investigate the financial affairs of the Debtor under 11 U.S.C. § 704 (which necessarily includes determination of the value of the Real Property), and (ii) the Debtor's duty to cooperate with the Chapter 7 Trustee under 11 U.S.C. § 521. See, *Smith v. United States*, 508 U.S. 223, 228 (1993); *Standiferd*, 641 F.3d at 1213.

The Debtor received and was aware of the Order Compelling Access. The Debtor filed an Objection to the Chapter 7 Trustee's motion seeking entry of the Order Compelling Access. Before it was even entered, the Debtor herself noted an appeal from the Order Compelling Access. Once it was entered, the Order Compelling Access was mailed to the Debtor by the Court. In addition, Ms. Shortall emailed a copy of the Order Compelling Access to the Debtor shortly after it was entered.

The Debtor refused to obey the Order Compelling Access. When she emailed the Order Compelling Access to the Debtor, Ms. Shortall sought the Debtor's agreement on a mutually convenient time for the Chapter 7 Trustee's inspection of the Real Property consistent with the terms of the order. The immediate response was the Cease-and-Desist Demand sent by Mr. Seebeck. A few days later, Ms. Shortall emailed the Debtor the Cease-and-Desist Demand and again requested cooperation on setting a mutually agreeable time for access to the Real Property.

The Debtor did not respond and made no effort to work with the Chapter 7 Trustee to arrange a mutually agreeable date by November 15, 2023, as required by the Order Compelling Access. As a result, the Chapter 7 Trustee sought and obtained the Show Cause Order.

The Debtor's refusal was willful and intentional, and not merely the result of inadvertence, misunderstanding, or inability to comply. From the outset, the Debtor was intent on retaining use and possession of the Real Property. Many debtors seek the protection of the Bankruptcy Court to avoid a foreclosure sale of their real property. Seeking those benefits, the Debtor invoked the jurisdiction of this Court. As soon as it became clear that those benefits came with the corresponding burden of a duty to cooperate with the Chapter 7 Trustee, the Debtor steadfastly over the course of many months refused to cooperate. The evidence makes clear that the Debtor's refusal to obey the Order Compelling Access was willful and intentional, and not merely the result of inadvertence, misunderstanding, or inability to comply.

To the extent the burden shifted to the Debtor to explain her non-compliance, she simply has not offered a credible explanation.

In reaching this conclusion, the Court has been mindful of the Fourth Circuit's admonition in *Worley* that denial of discharge be reserved for instances where a debtor violates the "basic compact" of the bankruptcy fresh start. Simply stated, that compact calls for a debtor to cooperate with a Chapter 7 trustee in the administration of the bankruptcy estate in exchange for a discharge. Determining whether the value of real property would produce a distribution to creditors is at the very core of a Chapter 7 trustee's responsibilities. Here, the Debtor cannot claim the benefit of the "basic compact" because she willfully refused to obey this Court's lawful order to cooperate with the Chapter 7 Trustee.

**CONCLUSION**

For the above reasons, the Court determines that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(6) because she refused to obey a lawful order of this Court in the Main Case.

ACCORDINGLY, it is, by the United States Bankruptcy Court for the District of Maryland, sitting at Baltimore,

ORDERED, that 11 U.S.C. § 727(a)(6) bars the Court from entering a Chapter 7 discharge for the Debtor in the Main Case; and it is further,

ORDERED, that the Clerk of Court shall promptly enter a Notice of Denial of Discharge in the Main Case; and it is further,

ORDERED, that the Clerk of Court shall promptly close this Adversary Proceeding.

cc:     Kristin Ann Tkach Pelgrim
        Matthew W. Cheney, Acting U.S. Trustee
        Charles R. Goldstein, Chapter 7 Trustee
        Hugh M. Bernstein, Esq.
        Jessica F. Dillon, Esq.
        Brent C. Strickland, Esq.

-- END OF ORDER --